**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MELVIA WASHINGTON,**

       **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　**Case No.  6:10-cv-321-Orl-28DAB**

**SEARS ROEBUCK AND CO.,**

       **Defendant.**

_____

# ORDER

Melvia Washington ("Plaintiff"), pro se, brings the instant action against her former employer, Sears, Roebuck and Co. ("Defendant"), alleging retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Florida Civil Rights Act of 1992, sections 509.092, 760.01-.11, Florida Statutes ("the FCRA"). Plaintiff contends that she was terminated in retaliation for making a complaint about sexual harassment.

This case is before the Court on the Motion for Summary Judgment (Doc. 140) filed by Defendant, in response to which Plaintiff has filed a Memorandum in Opposition (Doc. 169). Defendant has also filed a Reply (Doc. 175) regarding the motion. Having considered the parties' submissions, the record, and pertinent law, the Court concludes that Defendant's motion must be granted.

### I.  Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

"'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer v. Sw. Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. AI Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

## II.  Discussion

The anti-retaliation provision of Title VII under which Plaintiff brings her claim provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against

any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).[1]  Plaintiff contends that her employment was terminated in retaliation for her making a complaint about sexual harassment to Defendant's Human Resources department.

Because Plaintiff has not presented any direct evidence of discrimination, the Court evaluates her retaliation claims using the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny to determine if Plaintiff can establish her retaliation claims through circumstantial evidence.  Under this framework, the plaintiff has the initial burden to establish a prima facie case of retaliation by a preponderance of the evidence.  McDonnell Douglas, 411 U.S. at 802.  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of" retaliation.  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

If the plaintiff establishes a prima facie case, a presumption of discrimination arises,

---

[1]See also § 760.10(7), Fla. Stat. (providing that "[i]t is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section").  The FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework as Title VII claims; thus, the outcomes of the claims are the same, and Plaintiff's FCRA claim need not be separately discussed.  Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1271 (11th (Cir. 2010).

see, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981), and the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions, McDonnell Douglas, 411 U.S. at 802.  The employer's "burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  If the employer meets its burden of production, "'the McDonnell Douglas framework—with its presumptions and burdens'—disappear[s], and the sole remaining issue [is] 'discrimination *vel non*.'" Id. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)).

To make a prima facie showing of retaliation, a plaintiff must establish:  (1) that she engaged in activity protected by Title VII; (2) that she was subjected to a materially adverse action by her employer; and (3) a causal connection between the protected activity and the adverse action.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 978 n.52 (11th Cir. 2008).  The second element is clearly met in this case because it is undisputed that Plaintiff's employment was terminated.[2]  However, Defendant challenges Plaintiff's satisfaction of the first and third elements.

A plaintiff can satisfy the first prong—protected activity—if she "shows that [s]he had

---

[2]To the extent Plaintiff argues that she suffered a materially adverse action other than her termination, her contention is rejected.  None of the other alleged actions that the Court can discern from the record evidence—for example, a seating assignment change and not having her emails answered—rises to the level of a materially adverse action as a matter of law.  Even if any of the other events mentioned by Plaintiff does constitute a "materially adverse action," no evidence of a causal connection between the complaint of harassment and any such event has been presented.

a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). "[A] plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he *subjectively* (that is, in good faith) believed that h[er] employer was engaged in unlawful employment practices, but also that h[er] belief was *objectively* reasonable in light of the facts and record presented." Id. Plaintiff cannot satisfy either the subjective or the objective component, and thus she has failed to present evidence that she engaged in protected activity.

The alleged protected activity in which Plaintiff engaged was a complaint of sexual harassment on June 11, 2008. On that date, Plaintiff submitted to Defendant's Human Resources department a handwritten document titled "Complaint Against Sexual Harassement [sic]" that stated:

> On 6/10/08 I was called into my supervisor's boss['s] office. Mark Spenser [sic] my boss, was to give me my monthly job review evaluation. Lou (Mark['s] supervisor) was busy typing with her back turned away from us. About 30 min[utes] into the review Mark decided to grab his crotch area and began to scratch holding his private parts as if to find an itch he could not scratch, as he was well aware of what he was doing. He did this jesture [sic] twice during our 2HR review from 4:10pm-6:00pm. I am not sure what he will do in the future. He may feel the need to exspose [sic] himself.

(Ex. 10 to Dhanpaul Aff.). The same day that Plaintiff submitted that complaint, she was interviewed about the incident by the HR Manager, Lena Dhanpaul.

The record evidence does not support a conclusion that Plaintiff subjectively believed that Spencer's actions amounted to sexual harassment. The notes from the HR interview

reflect that Plaintiff reported that Spencer scratched himself and that Plaintiff felt that the scratching was unprofessional and "inappropriate but it was not a sexual harassment." (Investigation Interview Form, Ex. 11 to Dhanpaul Aff.).[3] Additionally, during her deposition, Plaintiff testified that she did not believe Spencer "was coming on to [her] sexually." (Pl.'s March 2011 Dep., Doc. 142, at 105).[4]

Moreover, even if Plaintiff had subjectively believed that unlawful sexual harassment had occurred, it is not objectively reasonable to believe that Spencer's single act of

---

[3]The interview notes taken by Dhanpaul are signed by Plaintiff beneath a line that states: "I have read the above statements and believe them to be true to the best of my knowledge." (Ex. 11 to Dhanpaul Aff.). Plaintiff's position regarding the interview notes has changed throughout this case. In her Amended Complaint, Plaintiff stated that she was "forced" to sign the interview notes. (Doc. 20 at 3). In her depositions, Plaintiff did not recall the interview notes, stated that she "did not know" whether that was her signature on the interview notes, and stated that she did not remember whether she told Dhanpaul in the interview that she did not feel that Spencer had sexually harassed her. (Doc. 141 at 33-35; Doc. 142 at 91). In her response memorandum, Plaintiff suggests that Defendant has rewritten the first page of the interview notes, keeping the second page that Plaintiff signed. (See Doc. 169 at 6). Because the interview notes are not crucial to the resolution of the summary judgment motion, the Court will comment no further on Plaintiff's change in positions regarding them. As noted in the text, the record supports neither a subjective nor objective belief that Plaintiff's complaint constituted protected activity.

[4]As aptly noted by Defendant, Plaintiff did not provide much information at all during her depositions. During her first deposition, she answered "I don't know" or "I don't remember" to so many questions that Defendant successfully moved to compel Plaintiff to answer questions at a re-noticed deposition. (See Order, Doc. 123). At her second deposition, Plaintiff did not provide much additional information regarding even the most fundamental events that allegedly form the basis for her claim. Plaintiff may not now supplement the record with additional detail in support of her case, as she seems to attempt to do in the text of her response memorandum (Doc. 169). The additional information Plaintiff seemingly attempts to provide does not change the outcome of the McDonnell Douglas analysis in any event.

scratching himself[5] constituted actionable sexual harassment such that a report of it could constitute protected activity.  "[S]exual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001) (internal quotation and citations omitted).  "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The lone incident that Plaintiff reported is not "extremely serious" or *per se* sexual.  Cf. Simpson v. Borg-Warner Auto. Automatic Transmission Sys. Corp., No. 97 C 1911, 1998 WL 887092, at *3 (N.D. Ill. Dec. 10, 1998) (noting, in granting summary judgment to defendant in case where plaintiff complained of genital-scratching supervisor, that there was "nothing to suggest that [the supervisor] scratched with the intent to harass").  That single incident does not amount to unlawful discrimination, and no reasonable person could find that Plaintiff engaged in statutorily protected activity when she reported this isolated event.  Cf. Van Portfliet v. H & R Block Mortg. Corp., 290 F. App'x 301, 303-04 (11th Cir. 2008) (affirming district court's determination that as a matter of law, the plaintiff's report of isolated incident did not amount to protected activity that could support Title VII retaliation claim).  Thus, Plaintiff has not satisfied the first element of a prima facie case of retaliation.

Defendant also challenges the third element—a causal connection between protected

---

[5]Spencer denied scratching himself.  His supervisor, who was also present, also denied that any scratching occurred.  Fortunately, the Court need not determine whether the scratching did or did not occur in order to resolve the motion at hand.

activity and the materially adverse action.  Even assuming that Plaintiff had engaged in protected activity, Defendant is correct that Plaintiff has not presented evidence of a causal connection.  A "close temporal proximity" between a plaintiff's protected activity and the materially adverse action can satisfy this element.  See, e.g., Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).  However, the temporal proximity must be very close—periods of three and four months have been found too protracted in this circuit—and "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law."  Id.; accord Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007).  Here, nearly five months passed between Plaintiff's complaint in early June 2008 and her termination in early November 2008.  This span of time is too long to satisfy the "causal connection" prong based on temporal proximity, and Plaintiff has not presented any other evidence of a causal link between these two events.  Because Plaintiff has not satisfied the first or third elements, she has failed to establish a prima facie case of retaliation.

Furthermore, even if the Court found the prima facie case satisfied, Plaintiff's retaliation claim would fail at the pretext stage of the analysis. In response to Plaintiff's prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for terminating her—violation of Defendant's computer use policy.  It was determined that Plaintiff viewed real estate websites during working hours—using company computers for personal purposes when she was supposed to be working—and then denied doing so despite two witness statements as well as corroboration by Defendant's information technology department of Plaintiff's Internet activity.  Thus, Defendant is entitled to summary judgment on the

retaliation claim unless Plaintiff presents evidence creating a genuine issue of material fact regarding whether Defendant's reasons were a mere pretext for discrimination. See, e.g., Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

In determining whether an issue has been raised as to pretext, this Court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation omitted). This determination involves an "evaluat[ion of] whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1072 (3d Cir. 1996)). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions." Holifield, 115 F.3d at 1565.

Applying these standards, Plaintiff has failed to present evidence sufficient to create a genuine issue of material fact regarding whether Defendant's reason for its action was a pretext for retaliation. See Tidwell v. Carter Prods., 135 F.3d 1422, 1427 (11th Cir. 1998) (finding no issue raised as to pretext where evidence presented did "not provide the needed

'more than a mere scintilla of evidence' to survive a motion for judgment as a matter of law" and did "not present a substantial conflict in the evidence as to [the employer's] purported reason for terminating [the plaintiff] . . . as to support a jury question"). Plaintiff had been warned regarding improper use of the Internet six weeks prior to her sexual harassment complaint, (see Dhanpaul Aff. at 5 & Ex. 8 thereto),[6] and Plaintiff's attempts to attribute her termination to retaliatory motives are purely speculative.

Finally, Plaintiff has no viable claims for damages in any event. She has formally withdrawn her claim for lost wages, and she has also repeatedly stated—in filings as well as in her deposition—that she is no longer seeking damages for emotional distress, mental anguish, or pain and suffering. (See Docs. 87, 124, & 138; Pl.'s March 2011 Dep., Doc. 142, at 111-13). She may not reinstate those damages requests at this point, as she seemingly attempts to do in her response memorandum, (see Doc. 169 at 24).

In sum, Plaintiff has failed to satisfy two of the three elements of a prima facie case of retaliation. Additionally, Defendant has presented a legitimate nonretaliatory reason for Plaintiff's termination, and there is no genuine issue of material fact as to whether that reason is pretextual. And, Plaintiff has no viable claims for damages remaining anyway. Defendant is entitled to summary judgment.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

---

[6] Indeed, Plaintiff was counseled regarding a number of work performance issues both before and after she made her sexual harassment complaint. (See Dhanpaul Aff. & Attachs. thereto).

1. The Motion for Summary Judgment (Doc. 140) filed by Defendant is **GRANTED**.

2. The Clerk is directed to enter judgment for Defendant in accordance with this Order and thereafter to close this file.[7]

**DONE** and **ORDERED** in Orlando, Florida this 1st day of July, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

[7] The Court notes that there is an outstanding motion for fees (Doc. 139) related to compelling discovery responses from Plaintiff. The Court reserves ruling on that motion, which will be considered after the time has run for the filing of motions under Local Rule 4.18.